# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**CINDEE JAE JOHNSTON,**

    Plaintiff,

v.                                                                              Case No. 8:17-cv-1564-T-AAS

**NANCY A. BERRYHILL,**
**Acting Commissioner,**
**Social Security Administration,**

    Defendant.
_____/

## ORDER

Cindee Jae Johnston seeks judicial review of a decision by the Commissioner of Social Security (Commissioner) denying her claim for disability insurance benefits (DIB) under the Social Security Act, 42 U.S.C. Section 405(g). After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the administrative record, and the pleadings and the memoranda submitted by the parties, the Commissioner's decision is **AFFIRMED**.

### I.    PROCEDURAL HISTORY

On February 6, 2014, Ms. Johnston protectively filed an application for DIB, alleging a disability onset date of January 10, 2008. (Tr. 189–90). Disability examiners denied Ms. Johnston's application initially and on reconsideration. (Tr. 75, 84). Ms. Johnston then requested and received a hearing before an ALJ. (Tr. 29–64). On June 15, 2016, the ALJ decided Ms. Johnston was not disabled. (*Id.*). The

Appeals Council denied her request for a review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–5). Ms. Johnston now seeks review of the Commissioner's decision. (Doc. 1).

## II. NATURE OF DISABILITY CLAIM

### A. Statement of the Case

Ms. Johnston was fifty-five years old on the alleged disability onset date and sixty-one years old on the date of the ALJ's decision. (Tr. 189, 227). Ms. Johnston has at least a high school education and has past relevant work experience as a reception clerk. (Tr. 22, 51–52, 232). Ms. Johnston alleges disability due to Parkinson's disease. (Tr. 189, 231).

### B. Summary of the ALJ's Decision

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, if a claimant has no impairment or combination of impairments that significantly limit her physical or mental ability to do basic work activities, then she has no severe impairment and is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). Third, if a claimant's impairments do not meet or equal an impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the Listings), she is not disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work,

2

she is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). At this fourth step, the ALJ determines a claimant's residual functional capacity (RFC). "RFC is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Peeler v. Astrue*, 400 F. App'x. 492, 493 n.2 (11th Cir. Oct. 15, 2010). Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing her past relevant work or other work that exists in the national economy, then she is disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g).

Here, the ALJ determined Ms. Johnston had not engaged in substantial gainful activity since January 10, 2008, the alleged onset date. (Tr. 19). The ALJ then found Ms. Johnston had the following severe impairment: Parkinson's disease. (*Id*.). Notwithstanding this impairment, the ALJ found Ms. Johnston had no impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the Listings). (*Id*.).

The ALJ found Ms. Johnston had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),[1] with these limitations:

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a person] must have the ability to do substantially all of these activities. . . ." 20 C.F.R. §§ 404.1567(b), 416.967(b).

3

> [Ms. Johnston] can never climb ladders, ropes, or scaffolds, or crawl and can no more than occasionally climb ramps and stairs, balance, stoop, kneel, or crouch. She is limited to frequently perform bilateral fingering and to never reach overhead with the left upper extremity. She can have no more than occasional exposure to hazards such as unprotected heights and moving machinery, and she is limited to work performed indoors on smooth, dry flooring surfaces.

(Tr. 20). Based on the findings and testimony of a vocational expert (VE), the ALJ determined Ms. Johnston could perform her past relevant work as a reception clerk because this job did not require the performance of work-related activities precluded by Ms. Johnston's RFC. (Tr. 22). Therefore, the ALJ concluded Ms. Johnston was not disabled. (Tr. 23).

## III. ANALYSIS

### A. The Standard of Review

Review of the ALJ's decision is limited to determining whether the ALJ applied correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether substantial evidence supports his findings. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). There must be sufficient evidence for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240

n.8 (11th Cir. 2004) (citations omitted). The court must not make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision. *Id.* at 1240 (citation omitted). Instead, the court must view the whole record, considering evidence favorable and unfavorable to the Commissioner's decision. *Foote,* 67 F.3d at 1560; *see also Lowery v. Sullivan,* 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted) (stating that the reviewing court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual determinations).

### B. Issues on Appeal

Ms. Johnston raises two issues on appeal:[2] (1) whether the ALJ properly evaluated her subjective complaints; and (2) whether the ALJ properly evaluated Dr. Theresa Zesiewicz's medical opinion. (Doc. 15, pp. 12–22).

### 1. Whether the ALJ properly evaluated Ms. Johnston's subjective complaints.

Ms. Johnston challenges the ALJ's credibility determination. She argues nothing in the record contradicts her testimony about the severity of her Parkinson's disease related limitations. Ms. Johnston also argues the ALJ's credibility finding is

---

[2] Ms. Johnston's memorandum outlined three issues on appeal: (1) whether the ALJ findings regarding Ms. Johnston's symptoms are not supported by substantial evidence; (2) whether the ALJ failed to properly discredit Ms. Johnston's testimony; and (3) whether the ALJ failed to properly evaluate Ms. Johnston's treating physician opinion. (Doc. 15, pp. 12–22). Upon a closer review of Ms. Johnston's memorandum, Ms. Johnston's first and second argument address the same issue—whether the ALJ's credibility analysis is proper.

based on a mischaracterization of the medical evidence in the record. (Doc. 15, pp. 13–9). The Commissioner counters the ALJ's findings were both explicit and supported by citations to specific evidence that provided a reasonable basis for rejecting Ms. Johnston's testimony. (Doc. 16, p. 9).

In the Eleventh Circuit, when a claimant attempts to prove disability based on her subjective complaints, she must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of her alleged symptoms or evidence establishing her medical condition could be reasonably expected to cause her alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); SSR 16-3p; *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes she has an impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on the claimant's ability to work. *See* 20 C.F.R. §§ 404.1529(c), (d), 416.929 (c), (d); SSR 16-3p; *Wilson*, 284 F.3d at 1225-26.

If the ALJ elects not to credit the claimant's subjective testimony, she must articulate explicit and adequate reasons for her decision. *Dyer*, 395 F.3d at 1210 (quotation and citation omitted). A reviewing court will not disturb a clearly articulated credibility finding supported by substantial evidence in the record. *Foote*, 67 F.3d at 1562 (citation omitted).

6

Ms. Johnston testified that during the period of January 10, 2008, to December 31, 2010, she was disabled because of her Parkinson's disease related symptoms. Particularly, Ms. Johnston claims that her left arm was very weak and her hand and fingers would curl up like a claw, she also had problems using her right hand to write, she was constantly fatigued, she could not perform tasks timely, and she had trouble with balancing. (Tr. 37–46). Similarly, Richard Johnston, Ms. Johnston's husband, testified Ms. Johnston could not use her left arm due to weakness and that he had to help her get dressed sometimes. (Tr. 47). He also testified Ms. Johnston's ability to accomplish tasks was limited because Ms. Johnston was very slow and constantly fatigued. (Tr. 49). Both Ms. Johnston and Mr. Johnston testified the Parkinson's medication was not entirely helpful because during the off-time periods of the medication, Ms. Johnston's symptoms would return. (Tr. 44, 48).

In reaching her credibility determination, the ALJ considered the Johnston's testimonies, however, she determined Ms. Johnston's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 21). Particularly, the ALJ noted Ms. Johnston's subjective complaints of decreased left arm dexterity and mobility, stiffness and difficulty writing with the right hand, and shuffling when walking were inconsistent with the medical evidence. (Tr. 21–2).

Upon review of the record, the ALJ properly articulated explicit and adequate reasons for discrediting Ms. Johnston's subjective complaints and her reasons are

supported by substantial evidence as described below.[3] *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3.

To begin, the ALJ specified treatment notes from Dr. Theresa Zesiewicz, one of Ms. Johnston's treating physicians and a Parkinson's disease specialist, indicated that during the relevant period of January 10, 2008, to December 31, 2010, Ms. Johnston's Parkinson's symptoms improved with medication. (Tr. 21). For example, the ALJ noted Ms. Johnston began treatment with Sinemet around February 2008 with remarkable results. (Tr. 21, 317). Notably, after beginning treatment with medication, Ms. Johnston's physical examination showed "only mild rigidity in the upper extremities and mild weakness in the left upper extremity." (Tr. 21, 318).

Additionally, despite acknowledging Dr. John Dilullo's medical notes indicating reduced left shoulder shrug and slow gait, the ALJ noted multiple physical examinations from Dr. Zesiewicz and Dr. Fina Veda showing mild to no symptoms of left arm rigidity, dyskinesia, and tremor, as well as, normal gait. (Tr. 21, 304, 307, 312, 314, 368–69). Overall, this evidence supports a finding that despite Parkinson's related limitations, these limitations were not as severe as stated by Ms. Johnston. *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).

---

[3] While the ALJ decision does not contain an explicit finding as to the evaluation of Mr. Johnston's testimony, the ALJ's reasoning to discredit Ms. Johnston's testimony equally applies to Mr. Johnston's testimony. *See Foote*, 67 F.3d at 1562 (stating that "[a]lthough this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court.").

8

Further, nothing in the record leads to the conclusion that the ALJ's credibility findings are based on a mischaracterization of the evidence or are otherwise in error. *See Davis v. Astrue*, 346 F. App'x 439, 441 (11th Cir. 2009); *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (stating that "[t]he question is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it.").

Ms. Johnston points out that treatment notes from Drs. DiLullo and Jan K. Korthals document her allegations of the claw-like feature on her left hand, shuffling gait, and slow movement and fatigue. (Tr. 319, 321, 322, 499, 500, 503, 507). Ms. Johnston argues that the medical evidence on record supports her subjective complaints. This argument is unavailing.

First, Ms. Johnston is asking the court to re-weigh the medical evidence on record, which the court cannot do. *Phillips*, 357 F.3d at 1240 n.8; *see Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (stating that "even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence").

Second, Ms. Johnston's argument relies on medical records that either pre-date her alleged onset date or were created after the date she was last insured; therefore, the evidence is irrelevant. (Tr. 499, 500, 503, 322, 321, 499). *See Carroll v. Soc. Sec. Admin. Comm'r*, 453 F. App'x 889, 892 (11th Cir. 2011) (stating that "[e]vidence is irrelevant and immaterial when it relates to a time period after the eligibility

9

determination at issue") (citation omitted)); *McClain v. Comm'r, Soc. Sec. Admin.*, 676 F. App'x 935, 938 (11th Cir. 2017) (noting an ALJ did not err by failing to address evidence that discussed the claimant's condition outside the time frame that the claimant would qualify for benefits since the ALJ was tasked with determining whether the claimant was disabled between the onset date and the date last insured).

Third, some records predate the diagnosis and treatment of Parkinson's disease, and, therefore, are not indicative of Ms. Johnston's improvement with medication. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv) & (v), 416.929(c)(3)(iv) & (v) (considering the efficacy of medications along with treatment other than medications in assessing the intensity and persistence of a claimant's symptoms and pain to evaluate a claimant's ability to work).

It was not until February 2008 that Ms. Johnston was diagnosed with Parkinson's disease and began treatment with medication. (Tr. 320). Following her diagnosis, Ms. Johnston began treatment with Dr. Zesiewicz, whose treatment notes from the relevant period indicate that Ms. Johnston's Parkinson and related symptoms, including her left arm rigidity and, bradykinesia (slow movement), and dyskinesia were controlled with medication, even if the medication required occasional adjustments to account for any off-time periods. (Tr. 309, 312, 310). As apparently conceded by Ms. Johnston, when Dr. Zesiewicz evaluated her impairments, the claw-like feature of her left hand was not evident due to her good

response to the medication. (Doc. 15, p. 14). Overall, the ALJ made a sufficiently clear credibility determination supported by the record evidence.

### 2. Whether the ALJ properly evaluated Dr. Theresa Zesiewicz's medical opinion.

Ms. Johnston argues the ALJ failed to properly weigh the opinion of her treating physician, Dr. Zesiewicz. (Doc. 15, pp. 20–2). In response, the Commissioner contends the ALJ provided specific reasons to discount Dr. Zesiewicz's opinion and the ALJ's evaluation of the medical opinion is supported by substantial evidence. (Doc. 16, p. 10).

In evaluating medical evidence, the ALJ must specifically state the weight given to different medical opinions, and her reasons. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The ALJ must also give the treating physician's opinion considerable weight, unless good cause for not doing so exists. *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985) (citation omitted). Good cause exists when: (1) the evidence does not bolster the treating physician's opinion; (2) the evidence supports a contrary finding; or (3) the treating physician's opinion is conclusory or inconsistent with his own medical records. *Phillips*, 357 F.3d at 1240-41 (citation omitted). The ALJ's rejection of a treating physician's opinion must be supported by clearly articulated reasons. *Id.* at 1241. Without clearly articulating her reasons for rejecting a treating physician's opinion, the reviewing court cannot determine if the ALJ's decision is rational or supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).

On January 8, 2014, Dr. Zesiewicz stated Ms. Johnston "suffers from dyskinesis, stiffness, and imbalance" and opined Ms. Johnston's Parkinson's disease "is a progressive neurodegenerative disease," which has left her "physically disabled and unable to work since [March 1, 2010]." (Tr. 325).

Despite acknowledging Dr. Zesiewicz was Plaintiff's treating physician and a specialist in the treatment of Parkinson's disease, the ALJ gave little weight to the medical opinion because the opinion was not supported by Dr. Zesiewicz's medical notes. (Tr. 22). The ALJ concluded Dr. Zesiewicz's treatment notes indicated no inability to work due to dyskinesia, stiffness, and imbalance. Instead, they showed Ms. Johnston's limitations related to her Parkinson's disease improved with treatment and Ms. Johnston was doing well overall. (Tr. 22).

Dr. Zesiewicz's treatment notes show, at least during the relevant period, Ms. Johnston's Parkinson's related impairments improved with medication. These notes directly contradict Dr. Zesiewicz's opinion that Ms. Johnston was physically disabled and unable to work since March 1, 2010. Thus, the ALJ had good cause to discount the treating physician's opinion. *See Brown v. Comm'r of Soc. Sec.*, 442 F. App'x. 507, 512 (11th Cir. 2011) (per curiam) (finding the ALJ had good cause to discount a treating physician's opinion of a claimant's severe limitations because the treating physician's opinion contradicted his own treatment notes); *Good v. Astrue*, 240 F. App'x. 399, 403 (11th Cir. 2007) (per curiam) (same).

12

Further, even if the evidence in the record could support Dr. Zesiewicz's conclusion that Ms. Johnston was physically disabled and unable to work since March 1, 2010, the ALJ did not have to give great weight to this finding because the finding addresses an ultimate issue reserved to the Commissioner—whether Ms. Johnston is disabled. *See* 20 C.F.R. § 404.1527(d)(1)–(3) (stating that medical opinions on issues reserved to the Commissioner, such as whether a claimant is disable or unable to work, are not given any special significance). In sum, the ALJ provided clearly articulated reasons to discount Dr. Zesiewicz's opinion and these reasons are supported by substantial evidence. Remand is not warranted.

IV. **CONCLUSION**

The decision of the Commissioner is supported by substantial evidence and does not contain reversible error. Accordingly, it is **ORDERED** that:

(1) the decision of the Commissioner is **AFFIRMED** and the case is **DISMISSED**, with each party to bear its own costs and expenses; and

(2) the Clerk of Court shall enter final judgment for Defendant consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

**ORDERED** in Tampa, Florida, on March 5, 2019.

*Amanda Arnold Sansone*
AMANDA ARNOLD SANSONE
United States Magistrate Judge

13